1 | MICHAEL I. GOTTFRIED (State Bar No. 146689)
mgottfried@lgbfirm.com
2 | ALEKSANDRA ZIMONJIC (State Bar No. 210252)
azimonjic@lgbfirm.com
3 | LANDAU GOTTFRIED & BERGER LLP
1801 Century Park East, Suite 700
4 | Los Angeles, California 90067
Telephone: (310) 557-0050
5 | Facsimile: (310) 557-0056

6 | Attorneys for Plaintiff Kensel & Co., LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>MediaShift, Inc.,<br><br>        Debtor and Debtor in Possession. | Lead Case No. 2:15-bk-25024-SK<br>(Jointly administered with:<br>Case No. 2:15-bk-25030-SK)<br><br>Chapter 11<br><br>ADV. NO. _____ |
| KENSEL & CO., LLC,<br><br>        Plaintiff,<br><br>   vs.<br><br>MEDIASHIFT, INC.,<br><br>        Defendant. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; EXHIBITS** |

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff Kensel & Co., LLC ("Kensel LLC") alleges:

## REQUIRED PLEADING DISCLOSURE

1.      In accordance with the requirements of Local Bankruptcy Rule 7008-1, Kensel LLC hereby alleges that the claims for relief in this Complaint constitute core proceedings under 28 U.S.C. § 157(b) because the outcome of those claims could impact property of the above captioned bankruptcy estate and assets available for distribution to creditors.  Regardless of the core or non-core nature of the claims for relief asserted herein, Kensel LLC consents to the entry of final orders and judgment by the Bankruptcy Court to the maximum extent permitted by applicable law.  Defendant is hereby notified that Federal Rule of Bankruptcy Procedure 7008(a) requires each defendant to plead whether the claims for relief alleged against such defendant are core or non-core and, if non-core, whether consent is given to the entry of final orders and judgment by the Bankruptcy Court.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because the claims for relief in this Complaint arise in or are related to *In re Mediashift, Inc.*, the above-captioned bankruptcy case pending in this Court.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the bankruptcy case is pending in this district and division.  Pursuant to 28 U.S.C. § 1391, venue is also appropriate in this district and division because a substantial part of the events, acts or omissions giving rise to the claims asserted in this Complaint took place within this district.

## THE PARTIES

4.      Kensel LLC is a limited liability company organized and existing under the laws of the State of California with its principal place of business in the County of Orange, State of California.  Brendon Kensel ("Kensel") was the managing member of Kensel LLC at all relevant times.

5.      Defendant MediaShift, Inc. is chapter 11 debtor and debtor in possession (the "Debtor") in the above-captioned bankruptcy case.

1

### GENERAL ALLEGATIONS

***Formation of MediaShift, Inc. and creation of MediaShift assets***

6.   Kensel LLC, then known as Kensel Ventures LLC, acquired the domain name *MediaShift.com* from Randy Taylor ("Taylor") on February 28, 2006. **Exhibit 1** is a copy of the Domain Purchase Agreement (the "DPA") between Kensel Ventures LLC and Taylor.

7.   Kensel LLC used the *MediaShift* name to form MediaShift, Inc., a Delaware corporation (the "Original MediaShift").  Formed on March 10, 2006, Original MediaShift served as a platform for the acquisition of digital marketing and advertising technology firms and it was 99% owned by Kensel LLC.

8.   On May 30, 2006, Kensel and Taylor amended the DPA to assign the agreement to the newly formed entity, Original MediaShift, and change the consideration to $10,000 or equivalent stock. **Exhibit 2** is a copy of the amended DPA.

9.   Kensel and Taylor amended the DPA once again on December 14, 2006, to extend the term of the agreement.  **Exhibit 3** is a copy of the second amended DPA.

10.   On March 13, 2006, Original MediaShift filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the *MediaShift* name.  A copy of the USPTO Notice of Allowance of that application is attached as **Exhibit 4**.

11.   On July 28, 2006, Original MediaShift filed (i) a Community Trademark application for the United Kingdom and the European Union countries with the Office for Harmonization in the Internal Market ("OHIM"), and (ii) a trademark application with the Canadian Intellectual Property Office ("CIPO") for the *MediaShift* name. **Exhibit 5** is a copy of the Notification of Acceptance of the OHIM application. **Exhibit 6** is a copy a copy of the Notice of Allowance of the CIPO application.

12.   In July, 2006, Original MediaShift engaged a design firm to create a logo, an icon, business cards, letterhead, and a PowerPoint template for the *MediaShift* name (together, the "MediaShift Visual Assets"); the design was completed in September, 2006.

13.    On January 16, 2007, Kensel and Taylor amended the DPA for a third time to change consideration for the purchase of the *MediaShift* domain name to 33,333 shares of common stock of Original MediaShift.  **Exhibit 7** is a copy of the third amended DPA.

14.    On December 31, 2008, Kensel LLC caused Original MediaShift to dissolve. Upon dissolution, all of Original MediaShift assets reverted back to Kensel LLC, as its sole owner.

***Kensel and Kensel LLC's involvement with the Debtor***

15.    In 2010, Kensel became an advisor to Ad-Vantage Networks, Inc. ("Ad-Vantage").

16.    The Debtor, then known as JMG Exploration, Inc. ("JMGE"), acquired Ad-Vantage on August 31, 2012.

17.    Kensel became the president of Ad-Vantage on January 1, 2013; the president of JMGE on February 1, 2013; and the president of Travora Networks, another wholly owned subsidiary of JMGE, on February 6, 2013.

***The renaming of JMGE Exploration, Inc. to MediaShift, Inc.***

18.    In January 2013, Kensel, David Grant, the Chief Executive Officer of JMGE, and David Eastman the Chief Financial Officer of JMGE, began exploring a name change for JMGE to better match the company's advertising technology business.

19.    On January 16, 2013, Kensel proposed *MediaShift* as a possible name to Grant and Eastman, noting that it was a domain name that Kensel's company, Kensel LLC, already owned. A copy of Kensel's email proposal to Grant and Eastman is attached as **Exhibit 8.**  A few days later, Kensel and Grant met to discuss renaming JMGE to MediaShift name and using the MediaShift Visual Assets related to the name.

20.     On January 22, 2013, Grant confirmed to Kensel that JMGE was interested in acquiring the name: "I believe we have support from the management team for renaming JMGE to MediaShift. Let's discuss what it would take before I socialize it with all." A copy of Grant's email to Kensel is attached as **Exhibit 9.**

21.    On or about January 24, 2013, Kensel and Grant met in connection with JMGE's name transition and the anticipated transfer of the related assets - *MediaShift.com* domain name

3

and 8 related domain names (the "MS Domain Names"), trademarks, copyrights, and the MediaShift Visual Assets (together, "MediaShift Assets").  Kensel and Grant discussed the consideration for the MediaShift Assets and agreed that, in addition to compensating Kensel LLC for the assets, JMGE would also issue $10,000 of JMGE common stock to Taylor, in keeping with the spirit of the original domain name acquisition agreement between Taylor and Kensel LLC. Kensel and Grant discussed a possibility of JMGE paying an amount equivalent to Kensel's 6-month salary (worth $105,000, based on Kensel's base compensation at the time) in exchange for the MediaShift Assets.

22.   At Grant's request, Kensel emailed the MediaShift logo and icon assets to Jim Callahan, JMGE's Director of Marketing, in the week of January 28, 2013.

23.   On January 31, 2013, JMGE filed a trademark application with the USPTO for a word mark and character mark for the MediaShift name. Kensel provided his personal assistance and the materials from the Original MediaShift USPTO application to JMGE's counsel, which expedited the process significantly.

24.   On February 7, 2013 Brad Commins, Director of Information Technology at JMGE, requested from Kensel the password for Original MediaShift's account with the domain registrar, GoDaddy. The password was necessary to obtain access to the MS Domain Names.  A copy of Commins's email to Kensel is attached as **Exhibit 10.**

25.   Kensel provided the password for the Original MediaShift's GoDaddy account to Commins on February 9, 2013.  A copy of the email chain between Kensel and Mike Spalter, JMGE's Chief Operating Officer, confirming that Commins had obtained access to the Original MediaShift GoDaddy account is attached as **Exhibit 11.**

26.   On February 11, 2013, JMGE announced a pending name change to MediaShift, and the formal name announcement was issued March 4, 2013.  Copies of the two press releases are attached as **Exhibits 12** and **13.**

27.    On February 14, 2013, Jim Callahan, JMGE's Director of Marketing, sent an email to the company's employees with new MediaShift email signature line. A copy of that email is attached as **Exhibit 14.**

4

28.    Also on February 14, 2013, Kensel emailed the MediaShift PowerPoint template to the JMGE management team.  A copy of Kensel's email is attached as **Exhibit 15.**  This completed Kensel LLC's delivery of the MediaShift Assets to JMGE, as contemplated by the January 2013 agreement between Kensel LLC and JMGE.

29.    On May 29, 2013, MediaShift issued 3,000 shares (in the approximate value of $10,000) to Taylor, in accordance with the January 2013 agreement between JMGE and Kensel LLC.  A copy of MediaShift's investment letter to Taylor and related email correspondence is included as **Exhibit 16.**

30.    A few months later, JMGE decided to transition its two subsidiaries (Ad-Vantage and Travora Media, Inc.) to the MediaShift name, Kensel prepared a name transition document and organized a meeting with JMGE's marketing team on October 21, 2013 to present the name transition strategy.  Copies of the meeting invitation and the meeting presentation document are attached as **Exhibit 17.**

31.    On November 21, 2013, MediaShift, filed a Community Trademark application for the United Kingdom and the European Union countries with OHIM for the MediaShift name. Kensel provided the materials from the Original MediaShift OHIM application, including Kensel LLC's opposition to a claim filed by an unrelated third party, Shift Design Lda.  Kensel's assistance and the availability of the Original MediaShift OHIM materials expedited the application submission process.

32.    On November 22, 2013, MediaShift, also with Kensel's assistance, filed a trademark application with CIPO for the MediaShift name. In preparing the CIPO application, MediaShift used the materials from the Original MediaShift CIPO application.  Kensel's assistance and the availability of the Original MediaShift CIPO materials expedited the application submission process.

33.    On March 18, 2014, Kensel discovered that he was locked out of MediaShift's GoDaddy account and requested that he be granted continued access.  A copy of Kensel's email to Commins regarding denial of access is attached as **Exhibit 18.**  MediaShift failed to provide the updated password to Kensel.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34.    On multiple occasions during March 2014, Kensel reminded Grant that the agreement between JMG and Kensel LLC has not been finalized yet.  In response, Grant suggested that, instead of the previously contemplated compensation (*i.e.*, the 6-month severance pay), JMGE provide a $100,000 fee, payable in the form of a convertible promissory note.  At Grant's direction, Chad Payne, MediaShift's counsel, drafted a bill of sale (the "Bill of Sale") for the MediaShift Assets, which reflected the new consideration. Grant informed Kensel that the Bill of Sale needed MediaShift's board approval because Kensel was an officer of the company.

35.    On March 25, 2014, Grant confirmed to Kensel that he sent the Bill of Sale to the board for consideration and wrote to Kensel: "I need to hear from the board on pricing but anything you can show on the value it took to get it would be helpful."  A copy of email correspondence between Kensel and Grant is included in **Exhibit 19.**

36.    On March 27, 2014, at Grant's direction, MediaShift's corporate counsel Chad Payne revised the Bill of Sale by adding two provisions in which Kensel LLC (i) represented and warranted that it owned the MediaShift Assets, free and clear of any encumbrances, and (ii) agreed to indemnify MediaShift for any third party claims relating to the assets. The revised draft Bill of Sale provided that purchase price for the MediaShift Assets was $100,000, payable in the form of a convertible promissory note from MediaShift.  A copy of the Bill of Sale is included in **Exhibit 20.**

37.    Between March 27, 2014 and July 31, 2014, Kensel's last day of employment with MediaShift, Kensel made repeated demands to both Grant and Rick Baran, his successor, for payment of the agreed-upon consideration.

38.    Between Kensel's departure from MediaShift on July 31, 2014 and MediaShift's bankruptcy on September 30, 2015, Kensel made numerous requests to MediaShift for payment for the MediaShift Assets.  One such request is reflected in Kensel's May 22, 2015 letter to Grant. A copy of that letter is attached as **Exhibit 21.**

39.    On May 24, 2015, Grant responded to the May 22, 2015 letter, stating that Kensel's recollection of events was not correct. **Exhibit 22** is a copy of Grant's reply.

6

40.    MediaShift refused to sign the Bill of Sale or provide any consideration to Kensel in exchange for the MediaShift Assets. Kensel and Grant have been negotiating the terms of the agreement between Kensel LLC and JMGE for many months. Even though they might have agreed upon some of the terms and Kensel LLC delivered the MediaShift Assets to JMGE, Kensel LLC and JMGE never reached a final agreement on a material term - the price of the MediaShift Assets.  Accordingly, no binding oral or written contract has been formed between them.

41.    MediaShift did not list Kensel LLC as a creditor on its bankruptcy schedules, confirming its belief that it had no pre-petition agreement with Kensel LLC, and in turn, owed no contractual debt to Kensel LLC.

### FIRST CLAIM FOR RELIEF

**[Declaratory Relief Under 11 U.S.C. §§ 105 and 541 and 28 U.S.C. § 2201]**

42.    Kensel LLC realleges and incorporates herein by reference the allegations of paragraphs 1 - 41 above.

43.    An actual and genuine controversy exists as to Kensel LLC's rights and interests in the MediaShift Assets.

44.    Kensel LLC contends that (i) it is the sole owner of the MediaShift Assets, (ii) it holds exclusive right, title and interest in those assets; and (iii) its ownership, right, title and interest in the MediaShift Assets is free and clear of any and all other claims of ownership by MediaShift, Ad-Vantage, or any other parties.

45.    Kensel LLC further contends that MediaShift disputes its contentions set forth in this claim for relief and MediaShift claims ownership and other rights in the MediaShift Assets.

46.    Pursuant to 11 U.S.C. §§ 105 and 541 and 28 U.S.C. § 2201, the Plaintiff is entitled to a judicial determination and a declaratory judgment that (a) Kensel LLC is the sole owner of and holds exclusive right, title and interest in the MediaShift Assets, and Kensel LLC is the only party authorized by law to exercise such rights.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**SECOND CLAIM FOR RELIEF**

**[Permanent Injunction Under 11 U.S.C. § 105(a)]**

47.   Kensel LLC realleges and incorporates herein by reference the allegations of paragraphs 1- 41 above.

48.   MediaShift continues to exercise control and possession of the MediaShift Assets although such assets belong to Kensel LLC.

49.   Pursuant to 11 U.S.C. § 105(a), the Bankruptcy Court should issue a permanent injunction ordering MediaShift to return the MediaShift Assets to Kensel LLC and restraining MediaShift from asserting any right, title or interest in the MediaShift Assetts or interfering in any way with the MediaShift Assets.

**WHEREFORE, Kensel LLC prays:**

1.   On the First Claim for Relief, for a declaratory judgment determining that:

    a.   Kensel LLC is the sole owner of and holds exclusive right, title and interest in the MediaShift Assets and such ownership and right, title and interest is free and clear of any and all other claims of ownership by MediaShift; and

    b.   Kensel LLC is the only party authorized by law to exercise right, title and interest in the MediaShift Assets.

2.   On the Second Claim for Relief, for a permanent injunction

    a.   mandating that MediaShift return, release, relinquish, assign and transfer back to Kensel LLC all the right, title or interest in the MediaShift Assets; and

    b.   restraining MediaShift from asserting any right, title or interest in the MediaShift Assetts or interfering in any way with the MediaShift Assets.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1      3.     On each Claim for Relief:

2           a.    for costs incurred herein; and

3           b.    for such other and further relief as the Court deems just and proper.

5  Dated: November 25, 2015          LANDAU GOTTFRIED & BERGER LLP

By: _____
Aleksandra Zimonjic
Attorneys for Plaintiff Kensel & Co., LLC

EXHIBIT 1

## DOMAIN NAME PURCHASE AGREEMENT

THIS AGREEMENT (this "**Agreement**") is made this _28_ day of February, 2006 (the "**Effective Date**") by and among Randy Taylor, an individual ("**Seller**") and Kensel Ventures, LLC ("**Buyer**").

WHEREAS, Seller has registered the Internet Domain Name "MediaShift.com" (the "**Domain Name**") as a domain name with a registrar (the "**Registrar**") that is an accredited registrar of The Internet Corporation for Assigned Names and Numbers ("**ICANN**");

WHEREAS, Seller is willing to transfer the Domain Name, as well as trademark rights relating thereto, to Buyer;

NOW, THEREFORE, in consideration of the premises and the mutual agreements set forth in this Agreement, and for other good and valuable consideration, receipt of which is hereby acknowledged, Buyer and Seller agree as follows:

**1.**     **Purchase and Sale of Domain Name Rights.** Pursuant to the terms and conditions hereof, Buyer hereby agrees to purchase, and Seller hereby agrees to sell and transfer all of Seller's right, title and interest in the Domain Name and all of Seller's trademark and other rights therein or pertaining thereto which it now owns or may hereafter acquire in all jurisdictions in the world, if any, to Buyer, free and clear of all liens, claims or encumbrances of any nature whatsoever. On the Effective Date, Buyer and Seller agree to effect the transfer of the Domain Name by carrying out the applicable transfer procedures required by the Registrar. In addition, Seller agrees to execute all documents and to take such additional actions as may be reasonably requested by Buyer to effect the transfer of the Domain Name and to vest in Buyer good and marketable title in and all rights to use and register the Domain Name, and all of Seller's trademark rights relating thereto, including all goodwill associated therewith.

**2.**     **Payment.** Upon the consummation of a "Transaction" (as defined below), Buyer agrees to issue to Seller a number of shares of common stock of the "Acquiror" (as defined below) equal to 0.25% of the outstanding shares of the Acquiror as of the date of consummation of the Transaction, after giving effect to any shares of capital stock issued in connection with the Transaction (the "**Shares**"). The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever. Notwithstanding the foregoing, in the event that the Transaction is not consummated within one hundred eighty (180) days from the Effective Date, then Seller shall have the option of rescinding the transactions contemplated under this Agreement, by delivering written notice to the Buyer within one hundred eighty-five (185) days from the Effective Date stating that it elects to exercise its right to rescind, and upon receipt of such notice, the Buyer shall immediately transfer all of its rights in the Domain Name and any other rights it obtained pursuant to Section 1 above, back to the Seller and upon such transfer, the Buyer shall have no obligation to pay any consideration to the Seller. For purposes of the foregoing, (i) a "**Transaction**" shall mean the acquisition, by merger, stock purchase, asset purchase or otherwise, by an Acquiror of an online

advertising company and (ii) an "**Acquiror**" shall mean Buyer or an entity formed by or on behalf of Buyer.

**3.**     **No Challenge.**  Seller shall make no further use of the Domain Name as of the Effective Date, nor shall Seller challenge, interfere, solicit, encourage or assist others to challenge or otherwise interfere with Buyer's interest, right or use of the Domain Name.  Seller will not itself, or enable or allow another to, take any action or refrain from any action or otherwise support any claim that may detrimentally affect the registrability, validity of or commercial value associated with the Domain Name, including the goodwill associated therewith.  Seller will not challenge or oppose Buyer's registration of the Domain Name as a Domain Name, service mark or trademark in the United States or anywhere else in the world and will execute any document reasonably requested by Buyer to assist it in obtaining any such registration.

**4.**     **Representations and Warranties.**  Seller represents, warrants and covenants as follows:

a.     Seller shall deliver under this Agreement free and clear right, title and interest in and to the Domain Name.

b.     Seller is the owner of and has all right, title and interest in and to the Domain Name, free and clear of any liens, claims or encumbrances of any nature whatsoever.

c.     Seller has not used, and will not make or use, any fraud, misrepresentation, and false or otherwise inaccurate statement in the process of registration or maintenance of the registration of the Domain Name or in connection with the transaction underlying this Agreement.

d.     No fees are owing to the registrar of the Domain Name or to any other government agency or other entity or party with regard to the registration or maintenance of the Domain Name.  Seller warrants that, other than as may be warranted under the terms of this Agreement, all registration fees to the registrar of the Domain Name are current and shall remain so until final transfer of the Domain Name under this Agreement.

e.     Seller has not licensed or otherwise allowed or enabled the use of the Domain Name to any other person or entity, or granted any right with respect to the Domain Name to any other person or entity, that may, in any manner, restrict, impede or adversely effect the consummation of the transaction underlying this Agreement.

f.     The execution and performance of the transaction contemplated under this Agreement does not infringe upon any rule of law or the proprietary or other rights or interest of any third party, including, without limitation, trademark, trade-name, privacy or other rights, and shall not cause any harm, damage, expense or otherwise adverse effect upon or to Buyer.

g.     Seller is not seeking, and has not sought to use or sell the Domain Name for any unlawful purpose, including, but not limited to, unfair competition.

h.     Seller, and Seller's activities, does not constitute an infringement under the U.S. Anti-Cybersquatting Act of 1999, as amended from time to time.

i.     Seller has all legal authority, authorizations and capacity to enter into this Agreement and a transaction for the transfer of the Domain Name and to assume the rights and

EXHIBIT 1
11

obligations arising hereby and acknowledges that this Agreement is a legal, valid and binding obligation of Seller enforceable against it in accordance with its terms;

      j.     Seller is not currently engaged in any dispute with any other party concerning the Domain Name or any confusingly similar service marks, trademarks or Domain Name.

      k.     Seller is not aware of any claim that the past or current use by Seller of the Domain Name constituted or constitutes an infringement or violation of any trademark or other proprietary right of any third party.

      l.     Seller has not registered the Domain Name with any other registration service functionally similar to ICANN in any country other than the United States.

      m.     Seller is an "Accredited Investor", as that term is defined under Rule 501 of Regulation D promulgated under Section 4(2) of the Securities Act of 1933, as amended (the "**Securities Act**").

      n.     The Seller has such knowledge and experience in financial, tax and business matters so as to enable the undersigned to utilize the information made available to the undersigned in connection with his receipt of the Shares to evaluate the merits and risks of an investment in the Acquiror and to make an informed investment decision with respect thereto.

      o.     The Seller will not sell or otherwise transfer any Shares without registration under the Securities Act or applicable state or foreign securities laws or an exemption therefrom unless the Seller provides, at the Seller's expense, an opinion of counsel in form satisfactory to the Company to the effect that registration under the Securities Act and such laws is not required and the sale or transfer of such securities would not cause the Company's initial distribution of securities to violate any such laws. The Shares have not been registered under the Securities Act or under the securities laws of any other jurisdiction. The Seller is acquiring the Shares for the Seller's own account, for investment and not with a view to resale or distribution except in compliance with the Securities Act. The Seller has not offered or sold any portion of the Shares being acquired nor does the Seller have any present intention of selling, distributing or otherwise disposing of any portion of the Shares, which may be a violation of the Securities Act, unless (i) a registration statement has been filed and declared effective by the Securities and Exchange Commission covering such Shares to be resold or otherwise distributed; or (ii) the passage of a fixed or determinable period of time that makes such resale or distribution exempt from registration and is pursuant to Rule 144 promulgated under the Securities Act or upon the occurrence or nonoccurrence of any predetermined event or circumstance in violation of the Securities Act. The Seller is aware that there is currently no market for the Shares or the Common Stock.

    5.    **Legends of Certificates**. The stock certificate issued to represent Shares shall bear the following (or substantially equivalent) legend on the face or reverse side thereof.

"THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND IS BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH LAWS. THESE SECURITIES MAY NOT BE SOLD, TRANSFERRED OR ASSIGNED UNLESS THEY HAVE BEEN

DOCSOC/1154026v1/100150-0000

REGISTERED UNDER THE SECURITIES ACT OR UNLESS AN OPINION OF
COUNSEL IN FORM SATISFACTORY TO THE COMPANY IS FURNISHED TO
THE COMPANY TO THE EFFECT THAT REGISTRATION UNDER THE
SECURITIES ACT AND SUCH LAWS IS NOT REQUIRED AND THE SALE OR
TRANSFER OF SUCH SECURITIES WOULD NOT CAUSE THE COMPANY'S
INITIAL DISTRIBUTION OF SECURITIES TO VIOLATE ANY SUCH LAWS."

**5.      Representations and Warranties of Buyer.** Buyer hereby represents to Seller as
follows:

a.      Buyer has all the resources necessary to complete the transaction
contemplated herein and has the authority to commit such resources for the purpose of this
transaction; and

b.      Buyer has not and will not make any fraudulent or false statements or
misrepresentations in connection with the transaction underlying this Agreement.

**6.      Mutual Covenants.** Buyer and Seller agree to provide true and accurate information
about themselves and any other information required with regard to the transaction contemplated by
this Agreement. Neither Buyer nor Seller shall use or submit any inaccurate or false information or
otherwise impersonate any person or entity or user name or alias that they are not authorized to use.

**7.      Indemnification.** Seller acknowledges and understands the meaning and legal
consequences of the representations and warranties made by Seller herein, and that Buyer is relying
on such representations and warranties in making the determination to enter into this Agreement.
Seller hereby agrees to indemnify and hold harmless Buyer and each employee and agent thereof
from and against any and all loss, damage or liability due to or arising out of a breach of any
representation or warranty of Seller contained in this Agreement.

**8.      Further Actions.** Buyer and Seller shall execute and deliver any and all documents
deemed necessary to further the goals contemplated by this Agreement, including, without limitation,
all instruments of transfer and confirmation and take such other action as may reasonably be deemed
necessary or desirable in order to effectuate and confirm the transfer to Buyer of registration of the
Domain Name.

**9.      General.**

(i)      The rights and obligations under this Agreement may not be assigned or
transferred by Seller without the express written consent of Buyer. Without limiting the foregoing,
Buyer may assign this Agreement to an Acquiror. This Agreement shall be binding on all successors
and assigns of the parties hereto, as permitted by this Agreement.

(ii)      Any provision of this Agreement which is illegal, invalid or unenforceable
shall be ineffective to the extent of such illegality, invalidity or unenforceability, without affecting in
any way the remaining provisions hereof.

(iii)      This Agreement is the result of arms'-length negotiations between the parties
hereto and no provision hereof or thereof, because of any ambiguity found to be contained herein,
therein or otherwise, shall be construed against a party by reason of the fact that such party or its

legal counsel was the draftsman of that provision. Unless otherwise indicated elsewhere in this Agreement, (i) the term "or" shall not be exclusive; (ii) the term "including" shall mean "including, but not limited to," and (iii) the terms "herein," "hereof," "hereto," "hereunder" and other terms similar to such terms shall refer to this Agreement as a whole and not merely to the specific section, subsection, paragraph or clause where such terms may appear. The section, subsection and any paragraph headings contained herein are for purposes of convenience only and are not intended to define or limit or affect, and shall not be considered in connection with, the interpretation of any of the terms or provisions of this Agreement.

(iv)     This Agreement constitutes the complete and exclusive agreement between the parties regarding the subject matter hereof, and any and all previous representations, discussions and writings are merged and superseded by this Agreement. This Agreement may be modified only by a written document signed by all the parties hereto.

(v)     This Agreement will be governed by and construed according to the laws of the State of California, as such laws are applied to agreements entered into and to be performed entirely within California between California residents. Any controversy or claim arising out of or relating to this Agreement, the breach thereof, or the transactions contemplated hereby, shall be settled by arbitration in Orange County, California, in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The prevailing party in any legal action brought hereunder shall be entitled to recover its reasonable attorneys' fees from the other party.

(vi)     This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**[Signatures Appear on Next Page]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date by their duly authorized representatives.

"Seller"

2/28/06

Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

KENSEL VENTURES LLC

By: 3/6/06

Name:  Brendon Kensel
Title:  President

DOCSOC/1154026v1/100150-0000

6

EXHIBIT 1
15

EXHIBIT 2

## ASSIGNMENT OF AND AMENDMENT TO

## DOMAIN NAME PURCHASE AGREEMENT

THIS ASSIGNMENT OF AND AMENDMENT TO DOMAIN NAME PURCHASE AGREEMENT (this "**Amendment**") is entered into as of the $30$ day of May, 2006, by and between Randy Taylor, an individual ("**Seller**") and Kensel Ventures, LLC ("**Buyer**"), in order to (i) amend that certain Domain Name Purchase Agreement entered into by and between the Seller and the Buyer on February 28, 2006 (the "**Original Agreement**") and (ii) assign all right title and interest in and to Buyer's rights and obligations under the Original Agreement to MediaShift, Inc., a Delaware corporation and a wholly-owned subsidiary of Buyer ("**MediaShift**"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Original Agreement.

## W I T N E S S E T H:

In consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

**1.** **Amendments.** Section 2 of the Original Agreement shall be amended and restated in its entirety to read as follows (changes reflected in *bold italics*):

"2. Payment. Upon the consummation of a "Transaction" (as defined below), Buyer agrees to issue to Seller a number of shares of common stock of the "Acquiror" (as defined below) with a value equal to $10,000, *as calculated using the same per share valuation as the value per share of common stock in the Transaction, including any financing consummated in connection with the Transaction* (the "Shares"). The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever. Notwithstanding the foregoing, in the event that the Transaction is not consummated *on or before December 31, 2006*, then Seller shall have the option of rescinding the transactions contemplated under this Agreement, by delivering written notice to the Buyer within *five days following such date* stating that it elects to exercise its right to rescind, and upon receipt of such notice, the Buyer shall immediately transfer all of its rights in the Domain Name and any other rights it obtained pursuant to Section 1 above, back to the Seller and upon such transfer, the Buyer shall have no obligation to pay any consideration to the Seller. For purposes of the foregoing, (i) a "Transaction" shall mean the acquisition, by merger, stock purchase, asset purchase or otherwise, by an Acquiror of an online advertising company and (ii) an "Acquiror" shall mean Buyer or an entity formed by or on behalf of Buyer."

**2.** **Assignment.** Buyer hereby transfers and assigns to MediaShift and MediaShift hereby assumes all of Buyer's rights and obligations under the Original Agreement.

**3.** **Effect of Amendment.** Except as set forth in this Amendment, the Original Agreement shall remain in full force and effect.

DOCSOC/1171758v1/100150-0000

EXHIBIT 2
16

IN WITNESS WHEREOF, the parties have duly executed this Amendment as of the day and year first above written.

"Seller"

_____

Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

KENSEL VENTURES LLC

By: _____

Name:  Brendon Kensel
Title:    President

"MediaShift"

MEDIASHIFT, INC.

By: _____

Name:  Brendon Kensel
Title:    President

EXHIBIT 3

<u>**SECOND AMENDMENT TO**</u>

<u>**DOMAIN NAME PURCHASE AGREEMENT**</u>

THIS SECOND AMENDMENT TO DOMAIN NAME PURCHASE AGREEMENT (this "**Amendment**") is entered into as of the 14th day of December, 2006, by and between Randy Taylor, an individual ("**Seller**") and MediaShift, Inc., a Delaware corporation ("**Buyer**"), in order to (i) amend that certain Domain Name Purchase Agreement entered into by and between the Seller and the Kensel Ventures, LLC on February 28, 2006, as amended and assigned by Kensel Ventures, LLC to Buyer on May 30, 2006 (the "**Original Agreement**"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Original Agreement.

<u>W I T N E S S E T H</u>:

In consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

1.      <u>**Amendments**</u>.  Section 2 of the Original Agreement shall be amended and restated in its entirety to read as follows:

"2.      <u>Payment</u>.  As payment for Seller's right, title and interest in the Domain Name and all of Seller's trademark and other rights therein or pertaining thereto, on or before January 31, 2007, the Buyer agrees to issue to Seller common stock of Buyer with a value equal to $10,000 (the "**Shares**").  The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever."

2.      <u>**Effect of Amendment**</u>.  Except as set forth in this Amendment, the Original Agreement shall remain in full force and effect.

DOCSOC/1201827v1/100150-0000

EXHIBIT 3
18

**IN WITNESS WHEREOF**, the parties have duly executed this Amendment as of the day and year first above written.

"Seller"

_____
Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

MEDIASHIFT, INC.

By: _____

Name:  Brendon Kensel
Title:    Chief Executive Officer

EXHIBIT 3
19

EXHIBIT 4

Page 01 of 02

U.S. Patent and Trademark Office (USPTO)

# NOTICE OF ALLOWANCE

NOTE: If any data on this notice is incorrect, please fax a request for correction
to the Intent to Use Unit at 571-273-9550.  Please include the serial number of your
application on ALL correspondence with the USPTO.

**ISSUE DATE:** Jun 5, 2007

R E C E I V E D

MONIQUE M. HEYNINCK
STRADLING YOCCA CARLSON & RAUTH
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660

JUN 0 8 2007

Stradling Yocca Carlson & Rauth

## ** IMPORTANT INFORMATION:  6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to
use the mark in commerce.  You must use the mark in commerce and file a Statement of Use
(a.k.a. Allegation of Use) before the USPTO will register the mark.  You have SIX (6) MONTHS
from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if
you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement
of Use ("Extension Request").  If you file an extension request, you must continue to file a new
request every six months until the Statement of Use is filed.  Applicant may file a total of
five (5) extension requests.  FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE
TIME PERIOD WILL RESULT IN THE ABANDONMENT OF YOUR APPLICATION.

Please note that both the "Statement of Use" and "Extension Request" have many legal requirements
including fees.  Therefore, we encourage use of the USPTO forms, available online at
http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the
possible omission of important information.  Please note that the Trademark Electronic
Application System (TEAS) provides line-by-line help instructions for completing the Extension
Request or Statement of Use forms online.  If you do not have access to the Internet, you may
call 1-800-786-9199 to request the printed form(s).

### The following information should be reviewed for accuracy:

SERIAL NUMBER: 78/836095
MARK:                  MEDIASHIFT (STANDARD CHARACTER MARK)

OWNER:           MediaShift, Inc.
                 421 Orchid Avenue
                 Corona del Mar, CALIFORNIA  92625

This application has the following bases, but not necessarily for all listed goods/services:
Section 1(a): NO        Section 1(b): YES      Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

035-Advertising and business services, namely, arranging for the promotion of the goods
and services of others by means of a global computer network and other computer online
services providers; promoting the goods and services of others by providing links to

TMFR9B (3/2005)        ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS

EXHIBIT 4
20

Serial Number: 78/836095

the websites of others; promoting the goods and services of others by providing a web
site at which users can link to information pertaining to the goods and services
offered by advertisers; dissemination of advertising matter; dissemination of
advertising for others via the Internet
FIRST USE DATE: NONE; USE IN COMMERCE DATE: NONE

042-Computer services, namely, designing, implementing and maintaining web sites for
others
FIRST USE DATE: NONE; USE IN COMMERCE DATE: NONE

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

DOCKETED

JUN 1 1 2007

TMRF2 (REV 9/2003)      ADDITIONAL INFORMATION MAY BE PRESENT IN THE USPTO RECORDS.

EXHIBIT 4
21

EXHIBIT 5

STRADLING YOCCA CARLSON & RAUTH

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

660 NEWPORT CENTER DRIVE, SUITE 1600

NEWPORT BEACH, CA 92660-6422

TELEPHONE (949) 725-4000

FACSIMILE (949) 725-4100

LAURA NICHOLSON
DIRECT DIAL: (949) 725-4043
LNICHOLSON@SYCR.COM

ORANGE COUNTY
(949) 725-4000
SAN DIEGO
(858) 720-2150
SAN FRANCISCO
(415) 283-2240
SANTA BARBARA
(805) 564-0065
SANTA MONICA
(310) 434-2788

January 23, 2007

Mr. Brendon Kensel
Kensel Ventures
421 Orchid Avenue
Corona Del Mar, CA  92625

*Client/Matter No.: 100150-0001/EU*

Re:    Community Trademark Application No. 005228002
       Mark: MEDIASHIFT
       Subject: Notice of Publication

Dear Brendon:

Enclosed please find a copy of the Notification of Acceptance for Publication we received from the Office for Harmonization in the Internal Market (OHIM) in connection with the above-identified trademark application.

The mark appeared in the Community Trade Marks Bulletin No. 001/2007 on January 8, 2007, for opposition purposes.  If no opposition is filed within three months, the application may be allowed for registration.

Thank you for allowing us to assist you in connection with this matter.  Should you have any questions, please do not hesitate to contact me.

Sincerely yours,

STRADLING YOCCA CARLSON & RAUTH

Laura F. Nicholson, Paralegal

Enclosure

cc:    Philip Koehler, Esq. (w/o enclosure)

DOCSOC/1207013v1/100150-0001

EXHIBIT 5
22

**210** 005228002

**220** 28/07/2006

**442** 08/01/2007

**541** MEDIASHIFT

**731** MediaShift, Inc.
421 Orchid Avenue
Corona Del Mar California 92625
US

**740** URQUHART-DYKES & LORD LLP
30 Welbeck Street
London W1G 8ER
GB

**270** EN FR

**511**

EN-35- Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; promoting the goods and services of others by providing links to the web sites of others; promoting the goods and services of others by providing a web site at which users can link to information pertaining to the goods and services offered by advertisers; dissemination of advertising matter; dissemination of advertising for others via the Internet.

EN-42- Designing, implementing and maintaining web sites for others.

**300**   US 13/03/2006 78/836,095

EXHIBIT 5
23

EXHIBIT 6



| | |
|---|---|
| **Office de la propriété intellectuelle du Canada** | **Canadian Intellectual Property Office** |
| Un organisme d'Industrie Canada | An Agency of Industry Canada |
| 50, rue Victoria Place du Portage I Gatineau (Québec) K1A 0C9 | 50 Victoria Street Place du Portage I Gatineau, Québec K1A 0C9 |



| Date |
|---|
| 09 nov/Nov 2007 |
| Votre référence - Your reference |
| 78583-32 PDL:mjp |
| Numéro de dossier - File number |
| 1310975 |

SMART & BIGGAR
SUITE 900, 55 METCALFE STREET
P.O. BOX 2999, STATION D
OTTAWA
ONTARIO K1P 5Y6

COPY

Propriétaire - Owner
MediaShift, Inc.

Marque de commerce - Trade-mark
MEDIASHIFT

<table>
<tr><td>

### AVIS D'ADMISSION

Avis est donné par la présente que ladite demande d'enregistrement de la marque de commerce a été admise.

**De plus, veuillez noter que pour procéder à l'enregistrement, vous devez maintenant satisfaire aux exigences suivantes:**

Des frais d'enregistrement de 200,00$ doivent être versés le ou avant le 28 juillet 2009.

En conformité du paragraphe 40(2) de la *Loi sur les marques de commerce*, une DÉCLARATION indiquant que le requérant a commencé à utiliser la marque de commerce au Canada en liaison avec les marchandises et/ou services mentionnés dans la demande doit être fournie le ou avant le 28 juillet 2009 à défaut de quoi la demande sera réputée abandonnée en vertu du paragraphe 40(3) de la Loi. Lors de la préparation de la déclaration d'emploi, veuillez s.v.p. vous référer à l'énoncé de marchandises/services qui figure sur la dernière feuille de vérification que vous avez reçue.

</td><td>

### NOTICE OF ALLOWANCE

You are hereby given notice that the subject application for registration of a trade-mark has been allowed.

**Furthermore, please note that in order to proceed to registration, the following is now required:**

A registration fee of $200.00 must be filed on or before July 28, 2009.

Pursuant to sub-section 40(2) of the *Trade-marks Act*, a DECLARATION of use of the Trade-mark in Canada in association with the wares and/or services specified in the application must be filed on or before July 28, 2009 failing which the application shall be deemed abandoned pursuant to sub-section 40(3) of the Act. When preparing your declaration of use, please refer to the statement of wares/services appearing on the latest Proof Sheet that you have received.

</td></tr>
</table>

Registraire des marques de commerce
Registrar of Trade-marks

Contact:    Section des déclarations et enregistrements/
Declaration/Registration Section
819-953-1154



*http://opic.gc.ca · http://cipo.gc.ca*



EXHIBIT 6
24

EXHIBIT 7

## THIRD AMENDMENT TO

## DOMAIN NAME PURCHASE AGREEMENT

THIS THIRD AMENDMENT TO DOMAIN NAME PURCHASE AGREEMENT (this "**Amendment**") is entered into as of the 16 day of January, 2007, by and between Randy Taylor, an individual ("**Seller**") and MediaShift, Inc., a Delaware corporation ("**Buyer**"), in order to (i) amend that certain Domain Name Purchase Agreement entered into by and between the Seller and the Kensel Ventures, LLC on February 28, 2006, as amended and assigned by Kensel Ventures, LLC to Buyer on May 30, 2006 and as further amended on December 14, 2006 (the "**Original Agreement**"). All capitalized terms not defined herein shall have the meanings ascribed to them in the Original Agreement.

### W I T N E S S E T H:

In consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

1.  **Amendments.** Section 2 of the Original Agreement shall be amended and restated in its entirety to read as follows:

"2.  Payment. As payment for Seller's right, title and interest in the Domain Name and all of Seller's trademark and other rights therein or pertaining thereto, on or before January 31, 2007, the Buyer agrees to issue to Seller 33,333 shares of common stock of Buyer (the "**Shares**"). The Shares will, when issued, be duly authorized, validly issued, fully paid and nonassessable and shall be issued free and clear of any liens, claims or encumbrances of any nature whatsoever."

2.  **Effect of Amendment.** Except as set forth in this Amendment, the Original Agreement shall remain in full force and effect.

EXHIBIT 7
25

**IN WITNESS WHEREOF**, the parties have duly executed this Amendment as of the day and year first above written.

"Seller"

_____ 1/16/0_
Randy Taylor

2800 Riachuelo
San Clemente, CA 92673

"Buyer"

MEDIASHIFT, INC.

By: _____

Name:  Brendon Kensel
Title:   President

EXHIBIT 8

**Brendon Kensel**

---

| | |
|---|---|
| **From:** | Brendon Kensel <brendon.kensel@advn.com> |
| **Sent:** | Wednesday, January 16, 2013 7:57 PM |
| **To:** | David Eastman |
| **Cc:** | David Grant |
| **Subject:** | RE: Parent Company Name |
| **Attachments:** | MediaShift Logo.bmp |

Dave

One possibility for a parent name is MediaShift. This is a URL I already own. This was the name I used for a roll-up effort in 2007 (see attached logo). By coincidence this name may also be appropriate for the disruptive business model we are pursuing. With this name the ideal trading symbol would be MSFT, but I don't think Microsoft is prepared to relinquish this yet. Alternatives may include: MEDI, MSHF, MESF, MEFT.

The two subsidiaries would follow:

AdVantage Networks – The AdVantage Networks Monetization Platform (AMP) enables operators of Internet networks to monetize their audiences.

Travora – The largest 'On the Go' ad network that enables advertisers to engage relevant audiences through unparalleled customer segmentation, rich data profiles, and across multiple devices.

We would then synthesis the above for the parent company description… MediaShift is a digital advertising technology company that offers advertisers access to the fastest growing audience platform focused on the travel, hospitality, foodservice and collegiate segments. Through its wholly-owned subsidiary AdVantage Networks, the company enables operators of Internet networks to monetize their audiences through patented technology. Through its wholly-owned subsidiary Travora, advertisers can access relevant 'On the Go' audiences with unparalleled customer segmentation using rich data profiles, and across multiple devices.

We still need to develop the core communication pillars, but the above is the framework.

Brendon

---

**From:** David Eastman [mailto:DEastman@ADVN.com]
**Sent:** Wednesday, January 16, 2013 4:45 AM
**To:** Brendon Kensel
**Cc:** David Grant
**Subject:** RE: Parent Company Name

We can discuss with counsel, it's probably feasible if we do it in the next week. The 14A is still under review by the SEC, meaning we haven't sent it out for shareholder approval yet. The name of the parent was set in the Merger Agreement, though I believe that's not binding. The name can be changed by the Board (which still has to approve the final 14A before it's filed) plus a plurality of the votes cast at a special meeting, which in essence consists of Dave and Sanjeev sitting in the same office.

I believe that Ad-Vantage is still the primary name that we're selling, and that it would be useful to get the ADVN ticker and have our company known as Ad-Vantage. Travora will be an ad network, which is a useful tool to monetize our

technology and accelerate its acceptance, but the Ad-Vantage technology is still the primary differentiator, and what we'll ultimately sell – the ad network will be a commodity product on steroids due to its association with the technology. We can discuss further tomorrow. What name did you have in mind for the parent?

---

**From:** Brendon Kensel
**Sent:** Tuesday, January 15, 2013 8:52 PM
**To:** David Eastman
**Cc:** David Grant
**Subject:** Parent Company Name

Dave

Do we have the ability to change the name of the parent company (the public entity)? I recommend we consider this as to avoid confusion with the subsidiary 'AdVantage Networks'. We will need to segment the parent and the sub for IR and other reasons, particularly since we will have two subs (which wasn't part of the original plan). The alternative is to change the name of the 'AdVantage' sub, but I think we are starting to build some small amount of equity in the network world. Travora Networks would be the other sub. If this is a possibility what is our timing to do this?

Brendon

_____

Brendon Kensel, President
AdVantage Networks

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon.kensel@advn.com



EXHIBIT 9

## Brendon Kensel

| | |
|---|---|
| **From:** | David Grant <David.Grant@ADVN.com> |
| **Sent:** | Tuesday, January 22, 2013 4:45 PM |
| **To:** | Brendon Kensel |
| **Subject:** | MediaShift |

Brendon,

I believe we have support from the management team for renaming JMGE to MediaShift.  Let's discuss what it would take before I socialize it with all.

Thanks,



**David Grant**
**Chief Executive Officer**
**Office:** 818.649.5711
**Email:** david.grant@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

EXHIBIT 10

**Brendon Kensel**

---

| | |
|---|---|
| **From:** | Brad Commins <Brad.Commins@BCCServices.net> |
| **Sent:** | Thursday, February 07, 2013 12:00 PM |
| **To:** | Brendon Kensel |
| **Cc:** | Linda Ebrahimian; Jim Callahan |
| **Subject:** | RE: mediashift.com domain |

Brendon,

Please send me the details required to access the registrar with whom the domain is registered and we will address renewals and email setup.

Thanks,

Brad

---

**From:** Jim Callahan [mailto:JCallahan@ADVN.com]
**Sent:** Thursday, February 7, 2013 11:09 AM
**To:** Brad Commins; Brendon Kensel
**Cc:** Linda Ebrahimian
**Subject:** mediashift.com domain

Hi Brad,

I assume the mediashift.com domain is under your purview now.

The domain is set to expire in 23 days.  Can you please renew it, once we are clear of the press release (dropping 2. 11) by at least a week.  I don't want to renew any earlier just in cause there is any weird site disruption during the renewal process.

Thanks,
Jim

------------------------------------



**Jim Callahan**
Director of Product Management and Marketing

O: 818.649.5723
M: 805.456.9147
E: jcallahan@advn.com

Follow us!

  

---

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

EXHIBIT 11

**Brendon Kensel**

| | |
|---|---|
| **From:** | Mike Spalter <Mike.Spalter@advn.com> |
| **Sent:** | Saturday, February 09, 2013 12:15 PM |
| **To:** | Brendon Kensel |
| **Cc:** | Brad Commins |
| **Subject:** | RE: MediaShift Email Addresses |

Perfect!  Thanks.

_____

**Mike Spalter**
Chief Operating Officer

O: 818.649.5735
M: 661.618.0002
Email: mike.spalter@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

**From:** Brendon Kensel
**Sent:** Saturday, February 09, 2013 11:56 AM
**To:** Mike Spalter
**Cc:** Brad Commins
**Subject:** Re: MediaShift Email Addresses

I have set Brad up as an admin and have sent two invitations.

Brendon

_____

Brendon Kensel, President
AdVantage Networks

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon.kensel@advn.com

Sent from my iPhone

On Feb 9, 2013, at 11:30 AM, "Mike Spalter" <Mike.Spalter@advn.com> wrote:

> Hi Brendon, I'd like Brad to be delegated Admin rights to the Go Daddy account.
> Can you facilitate or Richard?
>
> Thanks,
>
> _____

**Mike Spalter**
Chief Operating Officer

O: 818.649.5735
M: 661.618.0002
Email: mike.spalter@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

---

**From:** Brendon Kensel
**Sent:** Saturday, February 09, 2013 9:53 AM
**To:** Aaron Guerrero; Mike Spalter
**Cc:** Brad Commins; Richard Silverberg
**Subject:** RE: MediaShift Email Addresses

Team – Please meet Rich Silverberg. Rich is the designer of the MediaShift site and is hosting it for us. Please provide Rich the MX information for the email ASAP so he can plug it in today. Thanks.

Brendon

---

**From:** Brendon Kensel [mailto:brendon.kensel@advn.com]
**Sent:** Friday, February 08, 2013 6:47 PM
**To:** Aaron Guerrero; Mike Spalter
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

It looks like Brad accepted the invitation and I just confirmed access to the GoDaddy dash for MediaShift. The DNS is currently pointing to our dev host for the site so please don't change this, but the email can be set. Thanks.

Brendon

---

**From:** Aaron Guerrero [mailto:Aaron.Guerrero@advn.com]
**Sent:** Friday, February 08, 2013 6:03 PM
**To:** Brendon Kensel; Mike Spalter
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

I took a look at this, but am a little stuck without having access to the DNS management portal.

The virtual Exchange server address we have set up through Office 365 is: pod51018.outlook.com.

However without knowing what was originally set up in the MX record, it's hard for me to say if that's where the advn.com domain record resides.

I presume we'll be wanting to add mediashift.com to our existing Office 365 domain environment? If so, we will need to be able to access the DNS host (GoDaddy, from what I understand) and initiate confirmation of domain ownership before that domain can be fully added into the equation on the Exchange end.

With regard to forwarding, a forwarding DNS record can be created for the domain, but specific linkage between the mediashift and advn accounts would need to be configured at the account level. That is to say, we either need to set up specific mediashift accounts and then forward them to the advn accounts, or set those mediashift accounts up as aliases for the existing advn accounts. Let me know if there is something else I can do to help.

Thanks,

Aaron

---

**From:** Brendon Kensel
**Sent:** Friday, February 08, 2013 5:47 PM
**To:** Mike Spalter; Aaron Guerrero
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

Team – Please forward the mx information for the mediashift email to me directly and I will add to the Godaddy account. I have added Brad as an admin, but I haven't received the confirmation. The MediaShift website will go live on Sunday evening so we need to have the email addresses up by that time. I am available all weekend for questions. My cell is (949) 300-7828. Thanks.

Brendon

---

**From:** Brendon Kensel [mailto:brendon.kensel@advn.com]
**Sent:** Friday, February 08, 2013 1:37 PM
**To:** Mike Spalter; Aaron Guerrero
**Cc:** Brad Commins
**Subject:** RE: MediaShift Email Addresses

Please add one additional forwarding email address: investors@mediashift.com (forward to Dave Eastman's MediaShift email address). Thanks.

Brendon

---

**From:** Mike Spalter [mailto:Mike.Spalter@advn.com]
**Sent:** Thursday, February 07, 2013 11:53 PM
**To:** Aaron Guerrero
**Cc:** Brad Commins; Brendon Kensel
**Subject:** RE: MediaShift Email Addresses

Aaron just getting you in the loop on new mail accounts.

_____

**Mike Spalter**
Chief Operating Officer

O: 818.649.5735
M: 661.618.0002
Email: mike.spalter@advn.com

NOTICE - This message and any attached files may contain information that is confidential and/or subject of legal privilege intended only for use by the intended recipient. If you are not the intended recipient or the person responsible for delivering the message to the intended recipient, be advised that you have received this message

in error and that any dissemination, copying or use of this message or attachment is strictly forbidden, as is the disclosure of the information therein. If you have received this message in error please notify the sender immediately and delete the message.

**From:** Brendon Kensel
**Sent:** Thursday, February 07, 2013 8:06 PM
**To:** Mike Spalter; Brad Commins
**Subject:** MediaShift Email Addresses

Mike & Brad

Could you please set up the following MediaShift email addresses on Exchange:

David Grant
Sanjeev Kuwadekar
Mike Spalter
Brendon Kensel
Dave Eastman

Email addresses that I would like to set-up, but simply forward, follow:

contact@mediashift.com (forward to danyelle@advn.com)
privacy@mediashift.com (forward to Linda.Ebrahimian@advn.com)
marketing@mediashift.com (forward to jcallahan@advn.com)
advertisers@mediashift.com (forward to tim@travora.com)
publishers@mediashift.com (forward to drew@travora.com)
networks@mediashift.com (forward to Joe JWaimrin@ADVN.com)

BTW…I have sent Brad an invitation (via GoDaddy) to join the MediaShift account as an administrator.

Thanks.

Brendon

_____

Brendon Kensel, President
AdVantage Networks

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon.kensel@advn.com

EXHIBIT 12



**PARENT CO. OF DIGITAL ADVERTISING TECH PROVIDER ADVANTAGE
NETWORKS ACQUIRES TRAVORA MEDIA**

*Both will Operate as Subsidiaries Under Parent Company, MediaShift, Creating one
of the Largest On-the-Go Audience Platforms*

**Glendale, Calif. – Feb. 11, 2013** – JMG Exploration, Inc. (OTCBB: JMGE), soon to
be renamed MediaShift, Inc., has completed its second acquisition in the digital
advertising space by acquiring Travora Media, a leading travel ad network.
MediaShift will be leveraging the ad technology of AdVantage Networks, a wholly-
owned subsidiary, to enhance Travora's offerings with more robust tech-based
solutions for advertisers and publishers. An initial focus will be on enhancing data
profiles to allow for deeper audience segmentation and richer data insights. With over
30 million unique visitors per month, Travora and AdVantage Networks will offer
advertisers one of the largest audience platforms targeting on-the-go consumers.

AdVantage Networks enables operators of private Internet networks to monetize their
audiences through one of the fastest growing distributed ad technology platforms in
the world. AdVantage Networks expects to deploy its technology through hotels and
airports across North America and other key global destinations in 2013.  "Demand
for private Internet networks among major enterprise, such as hotels and airports, is
exploding. People want wireless access everywhere, especially when traveling,
which is a financial burden for network owners. Through Travora and AdVantage we
are allowing brands access to this desirable audience while providing a revenue
opportunity for network owners," said David Grant, CEO of MediaShift.

The acquisition of Travora is expected to accelerate MediaShift's growth strategy by
adding an established publishing network, advertiser and agency relationships, and
an experienced ad sales and ad operations team. Travora represents over 300
established travel brands across desktop, tablet, and mobile platforms, including
*Fodor's*, *Viator*, and *Vayama.* Travora achieved revenues of approximately $13.0
million in 2011. "We're building the largest last-mile ad platform with a massive install
base. By leveraging the technology and infrastructure of Travora and AdVantage, we
intend to drive higher performance and data insights for advertisers, publishers, and
Internet network providers," commented Brendon Kensel, President of MediaShift.

Advertisers, publishers, and Internet network providers benefit from MediaShift's
technologies and relationships through AdVantage Networks and Travora. The
company expects significant benefits to include:

Advertisers:
- IAB "viewable" impression standard available across network
- Access to travelers across all points in the travel lifecycle – from trip planning
  and booking, to the airport, in-room, and on-the-go

EXHIBIT 12
35



- Highly segmented rich data profiles for unprecedented audience segmentation to better identify intent
- Drive performance across mobile, tablets, and desktop environments
- Data insights into publisher performance

Publishers:
- Focused publisher monetization through dedicated teams and differentiated technology
- New opportunities to distribute content to a scaled travel audience
- Sharing of audience insights based on user interests

Internet Network Providers:
- Monetize private Internet network whether Wi-Fi or wired
- Innovative products such as web and mobile landing pages for premium ad inventory
- Behavioral insights from rich-data profiles

To learn more visit: www.mediashift.com.

###

**About MediaShift**
MediaShift is a digital advertising technology company that monetizes private Internet networks while offering advertisers access to one of the fastest growing audience platforms targeting on-the-go consumers. Through AdVantage Networks, a wholly-owned subsidiary, patented technology enables operators of private Internet networks to monetize their audiences through the fastest growing distributed ad technology platform in the world. Through Travora, another wholly-owned subsidiary, advertisers can access one of the largest travel ad networks and leverage rich data profiles for exceptional audience segmentation, across multiple devices, while gaining unmatched data insights.

**Media Contacts:**
Nicole Jordan
nicole@radixcollective.com
(310) 988-9157

EXHIBIT 12
36

EXHIBIT 13



**JMG EXPLORATION SHAREHOLDERS APPROVE NAME CHANGE TO MEDIASHIFT, INCREASE IN
AUTHORIZED SHARES, AND 1 FOR 2 REVERSE SPLIT**

*Ad Technology Company Operates AdVantage Networks and Travora as Subsidiaries*

**Glendale, Calif. – March 4, 2013** – JMG Exploration, Inc. (OTCBB: JMGE), doing business as
MediaShift, a leading digital advertising technology company that monetizes private Internet
networks while offering advertisers access to a rapidly growing audience platform targeting on-the-
go consumers, announced that at a special meeting of stockholders held today at its corporate
headquarters in Glendale, California, stockholders approved:

- Changing the company's name to MediaShift, Inc. in order to more accurately reflect the
  company's focus on advertising technologies;
- Increasing the authorized number of shares of the company's common stock from
  25,000,000 to 100,000,000, and
- Implementing a reverse stock split of the company's common stock of one share for every
  two (1-for-2) shares outstanding.

These actions, along with a new trading symbol for the common stock to be announced, will become
effective upon regulatory approvals and filings.

"These shareholder actions confirm the Company's transition to a leader in next generation digital
advertising", said David Grant, CEO of MediaShift.

David Eastman, MediaShift's CFO, added "we'd also like to remind our shareholders that the
expiration date of our common stock warrants previously scheduled to expire in January, 2013 was
extended to February 28, 2014, as disclosed in a Form 8-k filed with the SEC on November 28, 2012.
All other terms of the warrants were unchanged".

AdVantage Networks, a wholly-owned subsidiary, enables operators of private Internet networks to
monetize their audiences through one of the fastest growing distributed ad technology platforms in
the world. AdVantage Networks expects to deploy its technology through hotels and airports across
North America and other key global destinations in 2013.

MediaShift recently acquired Travora, a leading travel ad network, and is leveraging the ad
technology of AdVantage Networks to enhance Travora's offerings with more robust tech-based
solutions for advertisers and publishers. With over 30 million unique visitors per month, Travora and
AdVantage Networks will offer advertisers one of the largest audience platforms targeting on-the-go
consumers.

To learn more visit: www.mediashift.com.

### ###

EXHIBIT 13
37



**About MediaShift**
MediaShift is a digital advertising technology company that monetizes private Internet networks while offering advertisers access to one of the fastest growing audience platforms targeting on-the-go consumers. Through AdVantage Networks, a wholly-owned subsidiary, patented technology enables operators of private Internet networks to monetize their audiences through one of the fastest growing distributed ad technology platforms in the world. Through Travora, another wholly-owned subsidiary, advertisers can access a leading global travel ad network and leverage rich data profiles for exceptional audience segmentation, across multiple devices, while gaining unmatched data insights.

**Media Contacts:**
Nicole Jordan
nicole@radixcollective.com
(310) 988-9157

EXHIBIT 13
38

EXHIBIT 14

## Brendon Kensel

| | |
|---|---|
| **From:** | Jim Callahan |
| **Sent:** | Thursday, February 14, 2013 5:55 AM |
| **To:** | Brendon Kensel |
| **Subject:** | Re: New email signatures - Please start using immediately |

I may have misunderstood Aaron when we spoke yesterday.  If so, I'll ask him to create alias's for the group when he gets in.

Thx,
Jim

Sent from my iPhone

On Feb 14, 2013, at 5:27 AM, "Brendon Kensel" <Brendon.Kensel@mediashift.com> wrote:

> Jim
>
> Did op's set up those email addresses for Travora? Right now they are based on a first name standard. Thanks.
>
> Brendon
>
> Sent from my iPad
>
> On Feb 14, 2013, at 12:53 AM, "Jim Callahan" <JCallahan@ADVN.com> wrote:
>
>> Hi everyone,
>>
>> Please adopt the new email signatures for your respective subsidiary below.
>>
>> • MediaShift will be used by Dave G, Dave E, Brendon, Mike, and Sanjeev
>>
>> • We should all be using the same email format of firstname.lastname@
>>
>> • Travora employees should be using their @Travora.com email address (not @Travoramedia)
>>
>> Please remember to copy over your specific name and contact numbers.  If you do not have an office phone number, use your main office #.
>>
>> If anyone has any issues or questions with formatting or obtaining the proper email address, please contact Linda Ebrahimian for assistance.
>>
>> Thanks and enjoy ; )
>> - Jim

<BB3D1D6A-0E0C-49C6-B96A-3F6A6DCB06A6.png>

**Brendon Kensel**
President
[p] 212.389.2610  [m] 203.520.1352 [f] 212.267.0746
[e] Brendon@MediaShift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

<0C38124A-41C3-4B19-BC59-63590875B19B.png>

**Tim Springstead**
VP, Sales
[p] 212.389.2610  [m] 203.520.1352 [f] 212.267.0746
[e] tim.Springstead@travora.com
<530CBCED-ED5A-413A-873A-331437DB60C1.png><2DFD5230-5A7C-4804-9F0B-333859506296.png><7E4F4D64-6655-4281-8ABA-D66AAC90DC67.png>  a MediaShift company

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

<0FB55C05-94BE-47E0-B4D5-03B8FB77CAB5.png>

**Linda Ebrahimian**
Marketing Manager
[p] 818.649.5710  [m] 818.555.1334 [f] 818.649.5709
[e] Linda.ebrahimian@advn.com
<AF92D38C-C823-4D0B-A8AF-DD37A2E0F284.png><36BA9149-DAA2-4BE0-A2FE-581113CA903C.png><C0F1BAA9-3F63-40FC-A6EA-3B25971311B1.png>  a MediaShift company

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

EXHIBIT 15

## Brendon Kensel

| | |
|---|---|
| **From:** | Brendon Kensel |
| **Sent:** | Thursday, February 14, 2013 1:11 PM |
| **To:** | David Grant (david.grant@mediashift.com); Dave Eastman (david.eastman@mediashift.com); Mike Spalter (mike.spalter@mediashift.com); Sanjeev Kuwadekar (sanjeev.kuwadekar@mediashift.com) |
| **Subject:** | MediaShift PPT Template |
| **Attachments:** | #MediaShift Template #2.ppt |

Team – Attached is the PPT template for MediaShift.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

EXHIBIT 16

# INVESTMENT LETTER

May 29, 2013

Randy Taylor
2800 Riachuelo
San Clemente  CA 92673

Ladies and Gentlemen:

     1.    (a)    The undersigned ("Subscriber") represents that he is acquiring three thousand (3,000) shares (the "Shares") of Common Stock of MediaShift, Inc., a Nevada corporation (the "Company") for investment and not with a view to the sale or distribution of any part thereof, and that the undersigned has no present intent of selling or otherwise distributing the same.

     (b)    The Company has advised the Subscriber that the Shares have not been registered under the Securities Act of 1933 (the "Act"), as the offering of the Shares is to be effected pursuant to an exemption from the registration provisions of the Act, and similar exemptions under applicable state securities laws, and, in this connection, the Company is relying in part on the representations of the undersigned set forth herein.

     (c)    The undersigned has a pre-existing business or personal relationship with Brendon Kensel, an officer and director of the Company.

     (d)    Upon receipt of the Shares, the undersigned shall have received all consideration to which he is owed in connection with the purchase of the MediaShift.com domain name under the terms of that certain Domain Name Purchase Agreement entered into between MediaShift, Inc., a Delaware corporation (formerly, Kensel Ventures, LLC) on February 28, 2006, as amended on May 30, 2006 and on December 14, 2006.

     2.    (a)    The undersigned recognizes that the Shares are unregistered and must be held indefinitely unless they are subsequently registered under the Act or an exemption from such registration is available, and further recognizes that the Company is under no obligation to register the Shares.

     (b)    The undersigned understands and agrees that, in addition to any other restrictive legend which may be imposed on the certificate, the certificate evidencing the Shares will bear the following legend:

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933; THEY HAVE BEEN ACQUIRED BY THE HOLDER FOR INVESTMENT AND MAY NOT BE PLEDGED, HYPOTHECATED, SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF EXCEPT**

EXHIBIT 16
42

**AS MAY BE AUTHORIZED UNDER THE SECURITIES ACT OF 1933, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER.**


_____

Randy Taylor

2

EXHIBIT 16
43

**Brendon Kensel**

| | |
|---|---|
| **From:** | Brendon Kensel |
| **Sent:** | Wednesday, June 26, 2013 10:08 AM |
| **To:** | Randy Taylor; David Eastman |
| **Cc:** | Skaist, Mark L.; Rick Baran (rick.baran@mediashift.com) |
| **Subject:** | RE: MediaShift Shares - Investment Agreement |

Thanks Randy. I am copying Rick Baran, the company's new CFO.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

**From:** Randy Taylor [mailto:randy@taylordigital.com]
**Sent:** Wednesday, June 26, 2013 12:39 PM
**To:** David Eastman
**Cc:** Brendon Kensel; Skaist, Mark L.
**Subject:** Re: MediaShift Shares - Investment Agreement

Dave,

Please find the signed investment letter attached with this email.

**Randy Taylor** - President/CEO | 949-391-3333 x 701
www.taylordigital.com | Google+ | Facebook | LinkedIn
Translating Business Objectives Into Digital Solutions

On Wed, May 29, 2013 at 2:40 PM, David Eastman <David.Eastman@mediashift.com> wrote:

Dear Mr. Taylor:

Please see the attached investment letter. Per your previous correspondence with MediaShift, there is no representation required on your part as to your level of sophistication as an investor.

Please sign and return this letter. When you have done so, the Company will issue you a certificate for 3,000 shares of its common stock.


Thank you,


Dave Eastman


**David Eastman**

Chief Financial Officer



[p] 818.649.5733

[f]  818.649.5709

[e] David.Eastman@MediaShift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

EXHIBIT 17

**Brendon Kensel**

| | |
|---|---|
| **Subject:** | Copy: Changes for Brand Pivot |
| **Location:** | ADVN - Main Conference Room &/or Conference Dial-in Number: (712) 432-1500 - Access Code: 817725# |

| | |
|---|---|
| **Start:** | Mon 10/21/2013 11:30 AM |
| **End:** | Mon 10/21/2013 12:00 PM |

| | |
|---|---|
| **Recurrence:** | (none) |

| | |
|---|---|
| **Meeting Status:** | Not yet responded |

| | |
|---|---|
| **Organizer:** | Linda Ebrahimian |
| **Required Attendees:** | Karina Klever; Brendon Kensel |
| **Optional Attendees:** | Mike Spalter; Chad Payne (chad.payne@mediashift.com); Ali Kellerman |

Conference Dial-in Number: (712) 432-1500
Participant Access Code: 817725#





**MediaShift**
Brand Transition for AdVantage & Travora

October 2013

EXHIBIT 17
47

**MediaShift™**

# Brand Consolidation Objectives

■ Consolidate the AdVantage and Travora brand names into MediaShift.

■ Adopt a transitional brand strategy to bridge AdVantage and Travora to MediaShift without any loss of equity or momentum.

■ Retire former AdVantage and Travora brands after transitional period ensuring adequate time to communicate to employees, customers, press, analysts, and other appropriate constituents.

2

CONFIDENTIAL

EXHIBIT 17
48



## AdVantage Brand

- Established in early 2010, but used in earnest in the market starting in November 2012.

- Has gone through one logo revision (early 2012).



**Current Logo**

**Original Logo**

3

CONFIDENTIAL

EXHIBIT 17
49



# Travora Brand Today

- Established as Travel Ad Network (TAN) in December 2003.

- Rebranded as Travora Media in September 2011.

- Following the acquisition by MediaShift the logo color was updated.



**Current Travora Logo**

**Original Travora Logo**

CONFIDENTIAL

4

EXHIBIT 17
50

**mediaShift**™

# Current Positioning

**AdVantage Networks** enables operators of WiFi networks to monetize their audiences through the fastest growing distributed ad technology platform in the world.

**Travora** provides advertisers access a leading global travel ad platform that leverages rich data profiles for exceptional audience segmentation, across multiple devices, while gaining unmatched data insights.

5

CONFIDENTIAL

EXHIBIT 17
51



# Draft Consolidated Positioning

- MediaShift is a **next-generation digital ad tech company** that monetizes private WiFi networks and web publishing sites, while offering advertisers access to one of the fastest growing audience platforms targeting on-the-go consumers.

- MediaShift's targeting technology leverages **proprietary first-party data** and enables advertisers to reach highly targeted customer segments to maximize results.

- MediaShift has built the **first ad platform for WiFi environments** at airports, hotels, transit settings, restaurants, and other locations where consumers regularly connect to hotspots via their PC's, tablets, and smartphones.

CONFIDENTIAL

6

EXHIBIT 17
52



# Competitive Differentiation



CONFIDENTIAL

EXHIBIT 17
53

mediaShift™

# Productize the Former Brand Names

■ MediaShift's AdVantage Monetization Platform (AMP)

■ MediaShift's Travora publisher network

8

CONFIDENTIAL

EXHIBIT 17
54



# Brand Consolidation Plan

- **Pre-Announcement** – Now through Nov. 18
  - Prepare plan
  - Communicate to employees and investors

- **Phase I** – Kick-off Nov. 19 using the PhoCusWright Conference as the launch platform
  - PR announcement & communication to appropriate constituents
  - Update sales collateral
  - Change email and email signature lines
  - Update b-cards
  - Update web logos with modifier

CONFIDENTIAL

9

EXHIBIT 17
55

**mediaShift™**

# Brand Consolidation Plan

■ **Phase II** – Early Q1 2014 complete transition

  – Consolidate web sites

  – Complete any remaining email address change-over

  – Tidy up social network sites

10

CONFIDENTIAL

EXHIBIT 17
56

EXHIBIT "3"

**Brendon Kensel**

---

| | |
|---|---|
| **From:** | Brendon Kensel |
| **Sent:** | Tuesday, March 18, 2014 5:03 PM |
| **To:** | Brad Commins (brad.commins@mediashift.com) |
| **Subject:** | GoDaddy |

Brad

I tried to log into the MediaShift GoDaddy account and the PW has changed. Please forward the updated PW. Thanks.

Brendon



**Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

EXHIBIT "9"

**Brendon Kensel**

| | |
|---|---|
| **From:** | Chad Payne |
| **Sent:** | Thursday, March 27, 2014 5:06 PM |
| **To:** | David Grant; Brendon Kensel |
| **Subject:** | RE: For Review & Board Approval |
| **Attachments:** | MediaShift Bill of Sale - Kensel & Co - 03.27.14.docx; MediaShift Bill of Sale - Kensel & Co - 03.27.14 (redline).docx |

Dave & Brendon – Attached is an updated Bill of Sale for the MediaShift assets.

Per Dave's note below, I added an entire section of reps and warranties for MediaShift (Section 4) in order to demonstrate Kensel & Co.'s ownership and title to the Purchased Assets.  I also added language providing for Kensel & Co.'s indemnification of MediaShift (Section 5) for any and all claims by third parties relating to these assets (up to the value of the purchase price).

Let me know if you guys have any further questions or if I can otherwise assist.

Chad

**From:** David Grant
**Sent:** Tuesday, March 25, 2014 9:58 AM
**To:** Brendon Kensel
**Cc:** Chad Payne
**Subject:** RE: For Review & Board Approval

Brendon,

Per our discussion, I need to hear from the board on pricing but anything you can show on the value it took to get it would be helpful.  As I recall you purchased some or all of this from a partner so we would want to mitigate any claim he/she might have with a bill of sale.  I think it would be also helpful for the board if we included evidence that you and subsequently MediaShift via the USPTO perfected the name and asset.  That way you can rep/warrant ownership prior to the sale and your right to sale this asset.

With respect to the purchase agreement and the timing, I think the board is going to request that we put something in regarding indemnifications and reps that you the MediaShift asset free and clear prior to the sale and if a claim in made and the company loses this asset because it was not held in title or in name than the value of the purchase is adjusted.

I am just trying to anticipate the boards questions in advance and demonstrate the value.  Let get this together and I will present it to the board ASAP so they can review the pricing and material.

Thanks,



**David Grant**

Chief Executive Officer

[p] 949.298.4500

[e] David.Grant@MediaShift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

**From:** Brendon Kensel
**Sent:** Saturday, March 22, 2014 11:41 AM
**To:** David Grant
**Cc:** Chad Payne
**Subject:** For Review & Board Approval

Dave

Attached is a bill of sale Chad (copied) drafted for the MediaShift domain names, trademarks, copyrights, and all creative assets that Kensel & Co. is selling to MediaShift. You had indicated that since this involves an officer of the company we needed to get board approval. Since it appears there will be a board meeting in the next couple of days I would like to get this approved. Please review and call me or Chad with questions. Thanks.

Brendon

 **Brendon Kensel**
President
[p] 949.250.9011 [m] 949.300.7828
[e] brendon.kensel@mediashift.com

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

EXHIBIT "12"

# BILL OF SALE

## March __, 2014

This Bill of Sale (this "*Agreement*") is entered into by and among Kensel & Co., LLC, a California limited liability company (with affiliates, "*Seller*"), and MediaShift, Inc., a Nevada corporation (with affiliates, "*Buyer*").

## WITNESSETH:

WHEREAS, Seller wishes to sell, convey, transfer and deliver to Buyer the assets listed on Schedule I hereto (the "*Purchased Assets*");

NOW, THEREFORE, pursuant to the terms and conditions of this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

1.      For a purchase price of One Hundred Thousand Dollars ($100,000.00) in the form of a Convertible Promissory Note described in Section 2 below, Seller hereby sells, transfers, conveys, assigns and delivers to Buyer, its successors and assigns, to have and to hold forever, all of Seller's right, title and interest in, to and under all of the Purchased Assets, and Buyer agrees to buy all of Seller's right, title and interest in, to and under all of the Purchased Assets.

2.      In lieu of receiving cash for the consideration described in Section 1 hereto, Seller agrees to execute and receive from Buyer a convertible promissory note (the "*Convertible Promissory Note*") in the amount of One Hundred Thousand Dollars ($100,000.00) which may be automatically converted into a class of equity securities of the Buyer in accordance with the terms of the Convertible Promissory Note agreements on Schedules II, III and IV attached hereto.

3.      Seller has not sold, conveyed, assigned, transferred or delivered to any other person or entity the Purchased Assets contemplated by this Agreement.

4.      Seller hereby represents and warrants to the Buyer as follows as of the date hereof that Seller has and shall convey to Buyer good, valid, transferable and marketable title to, or valid leasehold interests in, all of the Purchased Assets, free and clear of all Encumbrances (as hereinafter defined) other than Permitted Encumbrances (as hereinafter defined).  In the event "*Encumbrance*" means any lien, pledge, hypothecation, charge, mortgage, security interest, encumbrance, claim, infringement, interference, option, right of first refusal, preemptive right, community property interest or restriction of any nature affecting property, real or personal, tangible or intangible, including any restriction on the voting of any security, any restriction on the transfer of any security or other asset, any restriction on the receipt of any income derived from any asset, any restriction on the use of any asset, any restriction on the possession, exercise or transfer of any other attribute of ownership of any asset, any lease in the nature thereof and any filing of or agreement to give any financing statement under the Uniform Commercial Code (or equivalent statute of any jurisdiction). "*Permitted Encumbrance*" means (i) liens for current taxes and assessments not yet past due, (ii) mechanics', workmen's, repairmen's, warehousemen's and carriers' liens arising in the ordinary course of business and (iii) any such matters of record, Encumbrances and other imperfections of title that do not, individually or in the aggregate, materially impair the continued ownership, use and

EXHIBIT 20
60

operation of the assets to which they relate in the conduct of the Business as currently conducted. In the event a claim is made

5.      Seller will hold harmless, defend and indemnify Buyer and its officers, owners and representatives from any and all claims, actions, proceedings, damages, liabilities, costs and expenses (including but not limited to reasonable attorneys' fees) brought by any third party arising out of any breach of Seller's representations or warranties, provided, however, that Seller's liability for its indemnification obligations shall not exceed the purchase price paid to Seller under Section 1 and 2 of this Agreement.

6.      At any time or from time to time hereafter, Seller shall, at the reasonable request of Buyer, take all action as may be reasonably necessary to put Buyer in actual possession and operating control of the Purchased Assets, and shall execute, acknowledge and deliver such further instruments of conveyance, power of attorney, sale, transfer and assignment, and take such other commercially reasonable action as Buyer may reasonably request in order to more effectively sell, convey, assign, transfer and deliver to Buyer all of the Purchased Assets and to assist Buyer in exercising rights with respect thereto.

7.      In the event of Buyer's default on the Convertible Promissory Note, the parties hereby agree that all rights, title and interest in, to and under all of the Purchased Assets shall automatically transfer back to the Seller as of the date of default, irrespective of the filing status, registration status, and/or any other rights or title Buyer may have in any of the Purchased Assets. In such event, Buyer agrees to take all action as may be reasonably necessary to put Seller in actual possession and operating control of the Purchased Assets, and shall execute, acknowledge and deliver such further instruments of conveyance, power of attorney, sale, transfer and assignment, and take such other commercially reasonable action as Seller may reasonably request in order to more effectively transfer back, and deliver to, Seller all of the Purchased Assets and to assist Seller in exercising rights with respect thereto.

8.      Except with respect to the Purchased Assets, Buyer does not hereby acquire or agree to acquire any additional assets of Seller or to assume or agree to become liable for or successor to any liabilities or obligations whatsoever, liquidated or unliquidated, known or unknown, contingent or otherwise, whether of Seller, any affiliate of Seller, any predecessor thereof, or any other person or entity, in connection with any such additional assets. No other statement in or provision of this Agreement, and no other statement, written or oral, action or failure to act, includes or constitutes any such assumption or agreement, and any statement to the contrary by any person is unauthorized and hereby disclaimed.

9.      Buyer does not hereby assume or agree to become liable for or successor to any liabilities or obligations whatsoever, liquidated or unliquidated, known or unknown, contingent or otherwise, whether of Seller, any affiliate of Seller or any predecessor thereof in connection with the Purchased Assets, other than liabilities that (i) are to be performed after the date of this Agreement (the "*Agreement Date*") and (ii) do not arise as a consequence of any breach of default on or prior to the Agreement Date. No other statement in or provision of this Agreement, and no other statement, written or oral, action or failure to act, includes or constitutes any such assumption or agreement, and any statement to the contrary by any person is unauthorized and hereby disclaimed.

EXHIBIT 20
61

10.      No terms, conditions, understandings, or agreements purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by both parties hereto.

11.      THIS BILL OF SALE, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW OR ANY OTHER LAW THAT WOULD MAKE THE LAWS OF ANY OTHER JURISDICTION OTHER THAN THE STATE OF DELAWARE APPLICABLE HERETO.

12.      Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.  If any provision of this Agreement is so broad as to be unenforceable, the provision is to be interpreted to be only so broad as is enforceable.

13.      This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same agreement.

14.      This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their respective successors (whether by operation of law or otherwise) and permitted assigns.

*[Remainder of page intentionally left blank; signature page follows]*

3

EXHIBIT 20
62

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the date first set forth above.

**BUYER**

**MEDIASHIFT, INC.**


By: _____

Name:  **Dave Grant**

Title:  **CEO**


**SELLER**

**KENSEL & CO.**


By: _____

Name:  **Brendon Kensel**

Title:  **Managing Partner**

*[Signature Page to Bill of Sale]*

EXHIBIT 20
63

**Schedule I**

**Assets**

 All of Seller's right, title and interest in, to and under the MediaShift properties, including, but not limited to, all intellectual property, domains, trademarks, creative assets, and all related research, documentation and goodwill relating thereto.  The Purchased Assets include the following:

DOMAINS

| Domain Name | Expires | Status |
|---|---|---|
| MEDIASHIFT.BIZ | 4/2/18 | Active - Locked |
| MEDIASHIFT.CO | 4/3/18 | Active - Locked |
| MEDIASHIFT.CO.UK | 3/7/18 | Active - Locked |
| MEDIASHIFT.COM | 3/1/18 | Active - Locked |
| MEDIASHIFT.ME | 4/4/18 | Active - Locked |
| MEDIASHIFT.MOBI | 3/1/18 | Active - Locked |
| MEDIASHIFT.NET | 5/22/15 | Active - Locked |
| MEDIASHIFT.TV | 3/1/18 | Active - Locked |
| MEDIASHIFT.US | 4/3/18 | Active - Locked |

TRADEMARKS & COPYRIGHTS

All of the previous trademark filings and copyrights for the Purchased Assets and all supporting research and documentation for such filings.

CREATIVE ASSETS

All of the creative assets relating to the Purchased Assets, including, without limitation, the following:

- MediaShift Logo
- MediaShift Icon
- MediaShift Brand Style Guide
- MediaShift Business Card Template
- MediaShift Letterhead and Envelope Template
- MediaShift Powerpoint Template

EXHIBIT 20
64

## **Schedule II**

**MEDIASHIFT, INC.
CONVERTIBLE PROMISSORY NOTE AND WARRANT
SUBSCRIPTION AGREEMENT**

[Signed Agreement Attached]

6

EXHIBIT 20
65

## **Schedule III**

**MEDIASHIFT, INC.**
**8% CONVERTIBLE PROMISSORY NOTE**
**_____, 2014**

[Signed Agreement Attached]

7

EXHIBIT 20
66

## **Schedule IV**

**MEDIASHIFT, INC.**
**WARRANT TO PURCHASE EQUITY SECURITIES**

[Signed Agreement Attached]

8

EXHIBIT 20
67

EXHIBIT 21



May 22, 2015

<u>Via Email</u>

David Grant
Chairman and Chief Executive Officer
MediaShift, Inc.
22391 Rosebriar
Mission Viejo, CA 92692

**Re: Payment for Transfer of MediaShift Assets**

Dear David:

In February 2013, Kensel & Co., LLC ("Kensel & Co") transferred the MediaShift name, URL's, trademarks, logo and icon, and other assets to JMG Exploration, Inc., now operating as MediaShift, Inc. (collectively, the "Company"). This transfer occurred in good faith after you and I had agreed that in consideration for this asset transfer the Company would execute an amendment to my offer letter to add a six (6) month severance agreement (the "Amendment"). The value of a six (6) month severance agreement factoring in base compensation only would have been $105,000, and this does not include any other forms of compensations. On March 12, 2013 the Company publically announced its name change to MediaShift.

By March 2014, the Amendment had not been effectuated by the Company, and in lieu of the Amendment, you proposed and I subsequently agreed that we would execute a simple bill of sale governing a transaction that would represent a similar value to the Amendment – the delivery of the MediaShift assets in exchange for a fee. In late March 2014, upon your direction, the Company's corporate counsel drafted and emailed to both you and I a bill of sale for the MediaShift assets. This agreement would have converted $100,000 in cash value into the convertible notes the company was offering at the time.

It is now 27 months past the original transfer date of these MediaShift assets that was made in good faith. As these assets have not been paid for, an enforceable obligation on the part of the Company, Kensel & Co is hereby asserting its' right, title and interest in, to and under the MediaShift properties, including, but not limited to, all intellectual property, domains, trademarks, creative assets, and all related research, documentation and goodwill relating thereto, all of which were conferred upon the Company and upon which the Company is generating revenue. The assets include the following:

<u>DOMAINS</u>

| Domain Name |
| --- |
| MEDIASHIFT.BIZ |
| MEDIASHIFT.CO |
| MEDIASHIFT.CO.UK |

| Domain Name |
| --- |
| MEDIASHIFT.COM |
| MEDIASHIFT.ME |
| MEDIASHIFT.MOBI |
| MEDIASHIFT.NET |
| MEDIASHIFT.TV |
| MEDIASHIFT.US |

### TRADEMARKS & COPYRIGHTS

All of the previous trademark filings and copyrights for the assets and all supporting research and documentation for such filings.

### CREATIVE ASSETS

All of the creative assets relating to MediaShift, including, without limitation, the following:

- MediaShift Logo
- MediaShift Icon
- MediaShift Brand Style Guide
- MediaShift Business Card Template
- MediaShift Letterhead and Envelope Template
- MediaShift PowerPoint Template

Accordingly, Kensel & Co. is hereby demanding immediate payment in satisfaction of the total outstanding balance of the original agreed upon value of these assets in the amount of $105,000. While we sincerely hope that litigation can be avoided, Kensel & Co. must insist that you observe your obligations and we are prepared to file suit if it does not receive full payment in settlement of these amounts by June 5, 2015.  If Kensel & Co. is forced to litigate this dispute, it will be seeking the full amount stated herein, plus interest on the balance outstanding, plus attorney's fees and costs of suit, along with any punitive damages that may be available. You are urged make full payment immediately to avoid the unnecessary hassle and cost of litigation.

Regards,

Brendon Kensel
Managing Partner

EXHIBIT "14"

## Brendon Kensel

| | |
|---|---|
| **From:** | David Grant <David.Grant@mediashift.com> |
| **Sent:** | Sunday, May 24, 2015 11:29 AM |
| **To:** | Brendon Kensel; Rick Baran |
| **Cc:** | glebowitz2@gmail.com; Mark Skaist |
| **Subject:** | Fwd: MediaShift Assets & Secured Notes Held by Lebowitz Investors |
| **Attachments:** | Kensel & Co - Letter to MediaShift, Inc. re MediaShift Assets 05.22.15.pdf; Glenn Lebowitz - Letter to MediaShift, Inc. re Subordinated Secured Convertible Notes 05.22.15.pdf |
| | |
| **Importance:** | High |

Brendon,

I am passing along you complaint to our CEO.  Your recollection regarding the MediaShift name and URL asset is not correct and far from an accurate portral of this situation, however this is not for me to decide.  Please direct any further correspondance to our CEO.

Glenn, with respect to your note I believe you have one of the most secured investment instruments in the company and MediaShift has every intention of getting all creditors paid.  I think there are other circumstances regarding your situation as it relates to this lending event and other investor commitments which I am hopeful would be in your favor.

Regards,

Dave
(o) 949-298-4500

Sent from my mobile. Please excuse any tYpOs.

CONFIDENTIALITY NOTICE: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email.

------ Original message------
**From:** Brendon Kensel
**Date:** Sun, May 24, 2015 10:20 AM
**To:** David Grant;
**Cc:** 'Mark Skaist (mskaist@sycr.com)';Glenn Lebowitz (glebowitz2@gmail.com);
**Subject:**MediaShift Assets & Secured Notes Held by Lebowitz Investors

Dave

Attached are two letters following-up on our phone conversation from this past Thursday. One letter is from me regarding the consideration owed to Kensel & Co for the MediaShift assets. The other letter is from Glenn Lebowitz regarding the existing or pending default by MediaShift of the subordinated secured convertible notes held by his investment group. Your prompt attention to these two matters is appreciated.

Brendon

_____

Brendon Kensel, Managing Partner
Kensel & Co.

[o] (949) 250-9011
[m] (949) 300-7828
[e] brendon@kenselandco.com



EXHIBIT 22
71

FORM B104  (08/07)                                                                              2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Kensel & Co., LLC | **DEFENDANTS**<br>MediaShift, Inc. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>LANDAU GOTTFRIED & BERGER LLP<br>1801 Century Park East, Suite 700<br>Los Angeles, California 90067 | **ATTORNEYS** (If Known)<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P. |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
1. Declaratory Relief Under 11 U.S.C. §§ 105 and 541 and 28 U.S.C. § 2201
2. Permanent Injunction Under 11 U.S.C. § 105(a)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 2  72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 1  91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ N/A |

Other Relief Sought

FORM B104 (08/07), page 2                                          2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
| --- | --- |
| NAME OF DEBTOR<br>MediaShift, Inc. | BANKRUPTCY CASE NO.<br>2:15-bk-25024 |

| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL DISTRICT OF CALIFORNIA | DIVISIONAL OFFICE<br>Los Angeles | NAME OF JUDGE<br>Sandra R. Klein |
| --- | --- | --- |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| --- | --- | --- |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| --- | --- | --- |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
| --- |
| |

| DATE<br>11/25/15 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Aleksandra Zimonjic |
| --- | --- |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| MICHAEL I. GOTTFRIED (State Bar No. 146689)<br>mgottfried@lgbfirm.com<br>ALEKSANDRA ZIMONJIC (State Bar No. 210252)<br>azimonjic@lgbfirm.com<br>LANDAU GOTTFRIED & BERGER LLP<br>1801 Century Park East, Suite 700<br>Los Angeles, California 90067<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056<br><br>*Attorney for Plaintiff* Kensel & Co., LLC | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>MediaShift, Inc.,<br><br><br>Debtor(s). | CASE NO.: 2:15-bk-25024-SK<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: |
|---|---|
| KENSEL & CO., LLC,<br><br><br>Plaintiff(s)<br>Versus<br>MEDIASHIFT, INC.,<br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____
> **Time:** _____
> **Courtroom:** _____
>
> **Place:**
> ☐ 255 East Temple Street, Los Angeles, CA 90012
> ☐ 3420 Twelfth Street, Riverside, CA 92501
> ☐ 411 West Fourth Street, Santa Ana, CA 92701
> ☐ 1415 State Street, Santa Barbara, CA 93101
> ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS. REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        Page 2                        **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
_Date_                 _Printed Name_                                    _Signature_

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.